ANSON JONES v. SHAW & SWISHER, AUDITORIAL BOARD.

The right by which an officer exercises the functions of his office and receives the emoluments thereof in this country, is subordinate to the right of the people to change their form of government; and therefore where an officer is deprived of his office by such change, he has no claim against the new Government for the salary which he would have become entitled to if no change had been made, and he continued to exercise the functions of the office; nor for indemnity for the loss of the office.

Error from Travis.  This was an application for mandamus to compel the Auditor and Comptroller to audit and adjust the claim of Anson Jones for about $10,000 ; the same being his salary for that portion of his term of office, as President of the late Republic of Texas, which had not expired at the date of the inauguration of the first Governor of the now State of Texas.

The Auditor and Comptroller demurred generally to the plaintiff's petition, which demurrer was sustained, and the plaintiff thereupon prosecuted this writ of error.

*Paschal* and *Duval*, for plaintiff in error.

*Attorney General*, for defendant in error.

WHEELER, J.  The doctrine which the argument for the appellant seeks to maintain, is, that upon a change of government, by the abolition of its organic law, and the establishment in its stead of a new Constitution, abolishing the old and establishing new offices, the incumbents in office under the former government, whose official terms had not expired, have a right to demand of the new government, the compensation for the unexpired term of their offices, to which they would have been entitled, if there had been no change of government,

and they had served out their full term of office under the then government. An office is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it. In England it is a species of incorporeal hereditament; but in this country no public office can properly be termed a hereditament. Nor if it were, would it make any difference as respects the present case. The people have the same inherent right to abolish offices, together with all the rights appertaining to them, when they see proper to alter, reform, or abolish their form of government, which they have to abolish the old and establish a new Constitution in its stead.

While an office subsists, the lawful incumbent has a vested right to it: that is, to exercise its functions and enjoy its emoluments. But when the office ceases to exist, the right necessarily ceases with it. To maintain a contrary doctrine would be in effect to deny the right of revolution; or the right of a people to abolish the old and establish a new form and system of government. For if the incumbents of office cannot be deprived of the emoluments of office, neither can they be deprived of the right to exercise the functions of office. They have precisely the same right to the one as the other. While the office exists they can no more be deprived of the one than the other. And it would result that there could be no change of government; at least, until the terms of office of all incumbents had expired. Suppose they were for life, or during good behavior, as some of the offices of the federal government are; or, as in England or other monarchical governments, hereditaments, as it is said in argument, they are; then, according to the argument, the incumbents having a vested title to them, which could not be defeated by a change of government, there could not be any such thing as a right of revolution, or reformation or change in the established system of government. Offices being hereditary, the incumbents would have not only a vested, but an hereditary title to them;

and a consequent right to hold and exercise them in perpetual succession. The argument certainly does not accord with American ideas of the nature and rights appertaining to offices and their incumbents. It might be for the very purpose of relieving themselves from an oppressive system of offices and office holders, that the people would see proper to reform their system of government ; and their right to do so is not and will not be questioned in this country.

A distinction is attempted to be taken between the right to exercise the functions of an office, and the right to enjoy its emoluments. But no such distinction exists. The legal incumbent of an office has a right to the office ; to exercise its functions, and enjoy all the rights, privileges, immunities and emoluments appertaining thereto. He holds and uses the former by the same title as he does the latter. The rights are concurrent and inseparable. The power to abolish the one includes the power to annul the other ; and the abolition of the one is the annulling of the other. Of course, there may be an office without emoluments ; but there can be no such thing as emoluments of office, where there is no office. The very statement of the proposition involves a contradiction in terms.

Again, it is attempted to assimilate the appellant's case to the ordinary case of contracts which are entire and indivisible ; where the default of the one party will relieve the other from his obligation to perform, while he will be entitled to compensation as if he had performed. But that principle in the law of contracts has no application to the case. It was sought to be enforced by similar arguments in support of the unexpired contracts of colonization, between the Empresarios and the former government ; and certainly with more apparent plausibility than in the present case. But it was rejected, and rightly, as having no proper application to the political society in the case of a change of government. It was said that such a doctrine might inflict intolerable burdens on the new government. " and would make revolution itself, but a change of

masters, without the power of reforming even existing abuses."
(Houston v. Robertson, 2 Tex. 1, 18, 19, *et seq.*)

The question of the appellant's right might have been presented in a more striking point of view, if he had been, as he might have been, chosen the Chief Executive of the State, upon the change of government. Would it have been claimed for him that he was entitled, at the same time, to receive the emoluments of the two offices of President of the Republic and Governor of the State ? Such a thing, I apprehend, would never have been thought of. And yet, in principle, the case would not have been different.

The change of government may have occasioned a greater sacrifice of private interests, on the part of the appellant than of others ; for which he may have a claim on the generosity or sense of justice of the new government. But it can give no legal right which can be enforced against it.

In fine, it is self evident that there can be no such thing as a right to the emoluments of an office which has no existence ; nor can there be any civil right in contravention of the inherent inalienable right of the people to change their form of government at pleasure : none which will operate an incumbrance, so to speak, upon the right of revolution ; which there certainly would be, if the right claimed in this case could be maintained.

When the office of President of the Republic of Texas ceased, by force of the change of government, all the rights appertaining to that office, necessarily ceased with it. Whatever injury that political event may have occasioned to individual interests, it cannot form the basis of a legal demand for satisfaction against the present government. It results that the Court did not err in refusing a mandamus to compel the Auditor and Comptroller to allow and audit the appellant's claim, and in dismissing the petition. The judgment is affirmed.

Judgment affirmed.