## ROBERT B. SEAY EX REL. v. ZIMRI HUNT.

(Case No. 1083.)

1. POLITICAL QUESTION — CITY ELECTION.— The eligibility to office, and the determination of the result of an election, are both questions of a political character, which the law-making power may refer to other tribunals than constitutional courts.

2. SAME — QUO WARRANTO.— The legislature may confer on a city council the power to determine primarily the question of the eligibility of a candidate for a municipal office, and their decision cannot be revised in a preceding by *quo warranto*.

3. SAME.— Whether power once being conferred on a city council to determine the question of the eligibility of a candidate for a municipal office, one conceiving himself aggrieved by their decision may, in the absence of a statute specially conferring authority, resort to a constitutional court to have the action of the council revised, *quære?*

4. PLEADINGS.— See statement of case for plea, in the nature of a plea of *res adjudicata*, held good on general demurrer.

5. MUNICIPAL OFFICER.— The mayor of the city of Dallas must have resided in that city twelve months before his election, to render him eligible to that office.

6. FACT CASE.— See opinion for facts under which it was held that one elected mayor of Dallas had not resided in the city for twelve months preceding his election, as required by the charter of that city.

APPEAL from Dallas. Tried below before the Hon. George N. Aldridge.

Proceeding in the nature of a *quo warranto*, filed by the appellant Seay, county attorney of Dallas county, in behalf of the state, on the relation of John Stone, against Zimri Hunt, on the 9th day of May, 1881, to show by what warrant he held and claimed the office of mayor of the city of Dallas. The answer of the defendant, to which plaintiff filed a general demurrer, was as follows:

1st. A demurrer and a special answer "That this court ought not to have and exercise any further jurisdiction of this case for this reason: That the city of Dallas, whose office of mayor it is alleged this respondent has

usurped, was heretofore, to wit, on the 5th day of April, A. D. 1881, and has been ever since, and is now, a municipal corporation, chartered and existing under and by virtue of an act of the legislature of Texas, entitled 'An act to incorporate the city of Dallas and to grant a new charter to said city,' approved August 9, A. D. 1876, and the acts amendatory thereof.

"That on said 5th day of April, A. D. 1881, one John J. Good was the duly elected and qualified and lawfully acting mayor of said city of Dallas, entitled by the terms of said charter to hold said office until said 5th day of April, A. D. 1881, and until his successor, then to be elected, should be elected and qualified. . . . That afterwards, to wit, on the 18th day of April, A. D. 1881, the city council of the city of Dallas, having duly met in pursuance of the charter and ordinances of said city for the purpose of installing the officers elected at said election, the relator, John Stone, presented himself before the said city council for the purpose of taking the oath of office, and of having his official bond approved, and of being installed as mayor of said city. That at the time and place last aforesaid, an objection was raised to the installing of said John Stone as mayor, for the reason that said John Stone did not then, nor on the date of the election, possess the qualifications prescribed by said charter for eligibility to the said office of mayor of said city. That said city council did then and there refuse to administer the oath of office to said John Stone as mayor, and did then and there refuse to pass upon and approve the official bond of said John Stone as mayor, and did then and there refuse to install the said John Stone as mayor of the said city of Dallas, until an investigation could be had by said city council as to the eligibility or ineligibility of said John Stone for said office of mayor. That an investigation as to the eligibility of said John Stone for the said office of mayor was had by said city council,

during which said investigation every facility and oppor-
tunity desired by the said John Stone for the production
of testimony and for argument upon the law and the
facts was accorded him, and the said city council, having
concluded said investigation, did on, to wit, the —— day
of ——, A. D. 1881, adjudge said John Stone to be, and to
have been at the time of his said election, ineligible and
disqualified to hold the office of mayor of said city of
Dallas, by reason of not having been a resident of said
city for the requisite length of time prescribed by said
charter, as a necessary qualification for said office of
mayor; and said city council did on, to wit, the 30th day
of April, A. D. 1881, adopt the following resolution, to
wit:

" ' WHEREAS, John Stone, who received a majority of
the votes cast for mayor of the city of Dallas at an elec-
tion held on the 5th day of April, 1881, had not been a
resident of the city of Dallas for the length of time re-
quired by the charter thereof, therefore

" ' Resolved, first. That the election of said John Stone
to said office is null and void.'

" 'Resolved, second. That another election for mayor of
the city of Dallas be and the same is hereby ordered to
take place on Tuesday, the 17th day of May, 1881.'

" That by the terms of said charter, and especially of
sections 28 and 29 of said charter, which said sections
read as follows, to wit:

" 'Section 28. The mayor and aldermen shall consti-
tute the council of the city. The city council shall meet
at such times and places as they shall by resolution di-
rect. The mayor, when present, shall preside at all meet-
ings of the city council, and shall have in all cases a
casting vote, except in elections. In his absence and the
absence of the president pro tem., any one of the alder-
men may be appointed to preside.

" 'Section 29. The said city council shall hold stated

meetings, and the mayor, of his own motion, or on the application of three aldermen, may call special meetings by notice to each of the members of said council, the secretary and the city attorney, served personally, or left at their usual place of residence. Petitions and remonstrances may be presented to the council in writing only, and the council shall determine the rules of its proceedings, and be the judge of the election and qualification of its own members, and have the power to compel the attendance of absent members and punish them for disorderly conduct.'

" The said city council has and had the exclusive jurisdiction and authority to judge of the qualification of the said John Stone for the said office of mayor.

" That the said city council has exercised, as aforesaid, the authority so granted therein, and, in pursuance and exercise of said authority and jurisdiction, declared said John Stone ineligible and disqualified for said office as aforesaid, and has adjudged his said election to be thereby void, and said judgment of said city council is conclusive. . . .

" Respondent further shows that heretofore, on to wit, the 30th day of April, A. D. 1881, the said John J. Good tendered his resignation of the said office of mayor held by him as aforesaid, and said resignation was accepted by said city council; that by reason of said John J. Good's resignation as aforesaid, and of said John Stone having been adjudged ineligible and disqualified, and his said election void as aforesaid, and of this respondent's being president *pro tem.* as aforesaid, it is the duty of this respondent to discharge the duties of mayor of said city of Dallas until some one is elected and qualified to fill said office of mayor under said charter. And it is in the discharge of this last duty as president *pro tem.* as aforesaid, and in this capacity, that respondent is now exercising the rights, discharging the duties and enjoying the emolu-

ments of said office of mayor of the city of Dallas, until some one shall have been duly elected at said election ordered for May 17, A. D. 1881, as aforesaid, and qualified to fill said office of mayor, all of which this respondent is ready to verify; wherefore he prays judgment whether or not this honorable court ought longer to take, have and exercise jurisdiction herein, and for such other relief as may to the court seem proper."

This plea was sworn to by one of the attorneys for respondent. Defendant pleaded a further special answer as follows:

"And further this defendant says: That the office of mayor of said city of Dallas is vacant; that John J. Good, who was the mayor of said city on the 5th day of April, A. D. 1881, has since then resigned; that John Stone, who was on said last mentioned date elected to succeed said Good, was not eligible for and not qualified to hold said office, for the reason that he had not been a resident of the city of Dallas for the length of time prescribed by the charter of said city as a necessary qualification for holding said office. . . .

"That the adjudication of said city council (setting it forth) upon the eligibility and qualification of said John Stone for said office of mayor as aforesaid, is conclusive of that question. That respondent was, on the 19th day of April, 1881, elected by said city council president *pro tem.* of said council, under and by virtue of said charter, to serve for one year from the date of his election. He has ever since been and is now president *pro tem.* as aforesaid. That by the terms of said charter, it is the duty of the president *pro tem.* to discharge the duties and receive the compensation of mayor, whenever the mayor fails, refuses or is unable to act. That by reason of the foregoing facts, it is the duty of respondent, under said charter, to act as mayor of said city of Dallas until a mayor is elected and qualified at the said election, to be

held on the 17th of May, 1881, as aforesaid, and it is in discharge of this duty, and in this capacity as president *pro tem.* as aforesaid, that respondent is now exercising the rights, discharging the duties and enjoying the emoluments of said office of mayor of the city of Dallas.

"That sections 10 and 16 of said charter are in the following words, to wit:

" 'Sec. 10. No person shall be eligible to the office of alderman unless he possesses the qualifications of an elector and shall have resided therein for the period of one year, and in the ward from which he is chosen six months next preceding his election, and paid a city tax and be at the time of his election an owner of real estate in the city, and not in arrears in the payment of any tax or other liability due to the city, or directly or indirectly interested in, or partner of, or interested with, any one interested in any contract with the city, for any public work or for furnishing any supplies to the city or any of its institutions.'

" 'Sec. 16. The mayor of the city shall be chief executive officer of said corporation, and no person shall be mayor who has not resided in the city one year, and who does not at the time of his election possess the qualifications of an alderman as hereinbefore defined; nor shall any person continue in the office of mayor who shall cease to possess any of the said qualifications.'

"This respondent further alleges that said John Stone does not, and did not on April 5, A. D. 1881, possess the qualifications for mayor as prescribed in said charter."

The facts connected with the duration of Stone's residence are stated full enough in the opinion.

*White & Plowman* and *H. Barksdale,* for appellant.

I. No intendments will be made in favor of special statutory tribunals, or of summary proceedings under them, but every fact necessary to confer jurisdiction must be

distinctly averred and proved.   People *ex rel. v.* The Re-
corder of Albany, 6 Hill, 429; Whitney *v.* Shufelt, 1
Denio, 594; Vivian *v.* Lister, 8 Port. (Ala.), 375.

II. Inferior jurisdictions, not proceeding according to
the course of the common law, are confined strictly to
the authority given.   They can take nothing by implica-
tion, but must show the power expressly given them in
every instance.   Mitchell *v.* Runkle, 25 Tex. Sup., 132; Guil-
ford *v.* Love, 49 Tex., 716, 743, 744; Williams *v.* Ball, 52
Tex., 607; Jones *v.* Crawford, 1 Johns. Cas., 20; Powers
*v.* The People, 4 Johns., 292; People *v.* Miller, 14 Johns.,
371; Marshall *v.* Thacker, 6 Wheat., 127.

III. The judgments or proceedings of such special statu-
tory tribunals may be assailed collaterally, or on *certiorari,*
for want of jurisdiction.   Starr *v.* Trustees of Rochester,
6 Wend., 564–567; McFadden *v.* Gill, 1 Blatchf., 309;
Denning *v.* Corwin, 11 Wend., 647; Bridge *v.* Ford, 4
Mass., 641–3; Hall *v.* Howd, 10 Conn., 514.

IV. In pleading the judgments of inferior and limited
jurisdictions, it is necessary to show not only that the
court had jurisdiction of the subject-matter, but that it
also acquired jurisdiction of the person of the defendant,
and the facts must be alleged which confer jurisdiction.
Turner *v.* Roby, 3 N. Y., 193; Cleveland *v.* Rogers, 6
Wend., 438; Adams *v.* S. & W. R. R. Co., 10 N. Y., 328;
Rex *v.* All Saints, 1 Mann & Ryl., 668.

V. To constitute a court ("be the judge"), the city
council must have met at a time and place appointed or
authorized by law.   "The authorized body must be duly
assembled."   Due notice of the time and place of a cor-
porate meeting is essential to the validity of any act
which shall bind the corporation.   Dillon on Mun. Corp.,
vol. 1, § 200.

VI. By the charter of the city of Dallas, section 28,
chapter IV: "The city council shall meet at such times
and places as they shall by resolution direct."   By section

29: "The city council shall hold stated meetings, and the mayor, of his own motion or the application of three councilmen, may call special meetings, by notice to each member of the council," etc.  To constitute a lawful meeting of·the city council, it must have been at a stated or a special meeting, except in a single instance — the meeting provided by section 6, chapter XI, for installation. "It shall be the duty of the city secretary to notify all persons elected or appointed to office, of their election or appointment; and the city council elect shall meet at the usual place of meeting, on the second Monday after their election, or as soon thereafter as possible, and be installed under the provisions of this act."

VII. The power conferred upon the city council to be " the judge " of the election and qualification of " its own members," creates it a special judicial tribunal — a court for the determination of a matter relating to its own organization.  As such tribunal it is not a council acting for the corporation; and its acts as such are not the acts of the city of Dallas, but it is a court sitting in judgment in a matter affecting its own internal organization, upon one of its own members, and its acts are the acts of a court, and not the acts of a council.  Tompert v. Lithgow, 1 Bush (Ky.), 176; Hadley v. Mayor, 33 N. Y., 603; State v. Common Council, 9 Wis., 254.

VIII. The city council, as such, is not a court.  Its action is legislative, not judicial.  The council, or governing body of a municipal corporation, is said in the books to be the legislature of the corporation, with its charter as a constitution.  " A city council is a miniature general assembly, and their ordinances have the force of laws passed by the legislature of the state."  Taylor v. Carondolet, 22 Mo., 105; Dillon on Mun. Corp., vol. 1, § 245, note 1.

IX. The city council is the judge (not the judges). The mayor and aldermen constitute the city council, and

all must be present.  They, all of them, constitute the special tribunal which is "the judge" of the election and qualification of the members of the council.  *Ex parte* Rogers, 7 Cow., 526; Ballard *v.* Davis, 31 Miss., 525; Hadley *v.* Mayor, 33 N. Y., 603; Downing *v.* Rugar, 21 Wend., 178; Charles *v.* Hoboken, 3 Dutch. (N. J.), 203.

X. The special answer demurred to set forth the acts of the city council of Dallas as a city council, not as a court, and as such city council it had no judicial power. It was not a court, and had no power to try or to give judgment upon the question of the eligibility of the relator, John Stone.

XI. The city council of Dallas had no jurisdiction over the person or the subject matter.  The charter did not confer upon the city council the power to try the right of the relator to the office of mayor of the city of Dallas, but only the right to be "judge" of the election and qualification of its own members.  Charter of City of Dallas, Sup., ch. IV, § 29.

XII. The jurisdiction of the city council embraced only "its own members," and any one not a member is absolutely exempt from the jurisdiction, and the proceeding void for that reason.  When jurisdiction is given as members, the plea must show that the defendant was a member.  Moore *v.* James, Willes, 122; Perkins *v.* Proctor, 2 Wilson, 282; Pearn *v.* Atwood, 13 Mass., 324, 342; Bowman *v.* Russ, 6 Cow., 234–5; Wyman *v.* Mitchell, 1 Cow., 316.

XIII. The propriety of the *quo warranto* as a means of determining the right to hold offices in municipal corporations is well established.  An information will lie to determine the title to such, notwithstanding the council is made, by an act of the legislature, the judge of the qualification of its own members.  High on Ex. Rem., § 685; 2 Dillon on Corp., § 680.

XIV. Charter provisions, to the effect that councils or the governing body shall be the judge of the election and qualification of its own members, do not oust the supervisory jurisdiction of the superior courts, unless it appears with unequivocal certainty that the legislature intended to take it away. 1 Dillon on Corp., §§ 141, 142, 368. The jurisdiction of the courts will be held not to be taken away by mere negative words. State v. Wilmington, 3 Harr. (Del.), 294; State v. Fitzgerald, 44 Mo., 426; State v. Funck, 17 Iowa, 364; Wammack v. Holloway, 2 A. R., 31; State v. Marlow, 15 Ohio St., 114; People v. Holden, 28 Cal., 123; High on Ex. Rem., § 624; McCrary on Elections.

XV. A lucrative office is valuable as property to a party entitled, and therefore when it is illegally withheld or usurped, a suit in some shape or other can be sustained for it. It is both property and a privilege, and the incumbent can only be deprived of it in the manner pointed out in the constitution. Ex parte Towles, 48 Tex., 435; Honey v. Graham, 39 Tex.; Taylor v. Porter, 4 Hill, 140; Hoke v. Henderson, 3 Dev., 12; Jones v. Perry, 10 Yerg., 59; Sedgwick on Stat. and Const. Law, 482.

XVI. The proceeding in the council which is set up as a bar to the suit of appellant in the district court was ex parte and in invitum; was without process known to the law, without issues, without a jury, and without parties or right of appeal, and if conclusive upon the ground that the jurisdiction is exclusive, is in violation of the provisions of the constitution, article 1, secs. 17, 19. Williamson v. Lane, 52 Tex., 345; Cooley on Const. Lim., 353, and cases cited next above.

XVII. The certificate of the election of an officer, or his commission, coming from a proper source, is prima facie evidence in favor of the holder, and in every proceeding except a direct one to try the title of such holder, it is conclusive. Dillon on Mun. Corp., vol. 2, sec. 716;

McKinney *v.* O'Connor, 26 Tex., 6, 22; Cooley on Const. Limitations, sec. 625; Calaveras *v.* Brockway, 30 Cal., 325; Morgan *v.* Quackenbosh, 22 Barb., 72; Bubre *v.* Robinson, 52 A. R., 66; Moulton *v.* Rud, 54 A. R., 320.

XIX. Two things must concur to constitute domicile: First, residence; and secondly, the intention of making it the home of the party. There must be the fact and the intent. It is not the mere act of inhabitancy in a place which makes it the domicile, but it is the fact coupled with the intention of remaining there, *animo manendi.* Story's Conflict of Laws, §§ 44, 46, 47; Vatell, p. 102, § 218; Putnam *v.* Johnson, 10 Mass., 374.

XX. Whoever removes into a town for the purpose of remaining there for an indefinite period, thereby establishes his domicile in that town. Green *v.* Windham, 13 Me., 225; 1 Am. Lead. Cas., 707; Oakes *v.* Hill, 2 Pick., 333.

XXI. Acquisition of a domicile does not simply depend on the residence of the party. The fact of residence must be accompanied by the intention of permanently residing in the new domicile, and abandoning the former. The change of domicile must be manifested *animo et facto*, by the fact of residence and the intention to abandon. Holliman *v.* Peebles, 1 Tex., 689; Sabriego *v.* White, 30 Tex., 584; 2 Kent's Comm., 431; Sear *v.* City of Boston, 1 Met., 250; Harvard College *v.* Gore, Sup., 5 Pick., 375.

*Morgan & Gibbs*, for appellee.[1]

GOULD, CHIEF JUSTICE.— 1. This is an information regularly filed under the act of 1879, regulating proceedings by *quo warranto*, charging that the defendant Hunt had usurped the office of mayor of the city of Dallas. The

[1] The exhaustive and able brief of appellee's counsel is omitted under a rule, rarely infracted, which excludes extended notice of the brief of the successful party on appeal.

relator Stone was elected to that office on the first Tuesday in April, 1881, and having received a regular certificate of election, presented himself before the city council on the 18th of April, to be installed as mayor. On that occasion four aldermen, elected also on the first Tuesday in April, were duly installed as such, but, objection being made that Stone did not possess the qualifications prescribed by the charter, the council did not install him, but passed a resolution appointing a committee of three of its members "to take evidence on the question of the eligibility of the mayor elect." It was also provided by resolution that when the committee meet Stone be notified, and be entitled to be present in person or by counsel, or both, and that the evidence taken be brought before the council one week thereafter. The evidence thus taken when Stone was present in person and by counsel was reduced to writing and reported to the city council at the time directed, and after one or two adjournments that body proceeded with the trial on the evidence, heard the argument of counsel on both sides, on the 28th of April rejected by a vote of six to two a resolution: "That John Stone, mayor elect of the city of Dallas, is entitled to be inaugurated in said office," and after a further adjournment to April 30th adopted by the same vote the following resolutions:

"WHEREAS, John Stone, who received a majority of the votes cast for mayor of the city of Dallas, at an election held on the 5th day of April, 1881, had not been a resident of the city of Dallas for the length of time required by the charter thereof, therefore

"Resolved, first. That the election of said John Stone to said office is null and void.

"Resolved, second. That another election for mayor of the city of Dallas be, and the same is hereby ordered to take place, on Tuesday, the 17th day of May, 1881."

It appears that John J. Good was mayor of Dallas at

the date of the election on April 5th, and presided at the various meetings of the city council, including that of April 30th, on which day he resigned. On April 19th, in accordance with the directions of the charter, the city council had elected one of the aldermen president *pro tem.*, Zimri Hunt being the alderman so elected. The charter directs that in case of failure, inability, or refusal of the mayor to act, the president *pro tem.* shall perform the duties and receive the fees and compensation of the mayor. Under this provision the defendant Hunt, after the resignation of Good, performed the duties of mayor.

The information was filed on May 9th. The defendant filed two distinct pleas, in each of which the proceedings of the council are substantially alleged, and in one of them it was in addition alleged that Stone was in fact ineligible. A general demurrer to these pleas was overruled. In a supplemental petition or information various matters are alleged tending to impeach the validity of the proceedings of the council determining that Stone was ineligible. The court, after various rulings on the pleadings, heard the case on May 25th, without a jury, and gave its judgment in favor of the defendant.

The evidence shows that Stone came to Dallas in 1876 for the purpose of making it his home, and with his family occupied different rented places in the city up to the fall of 1878, when he rented a place outside of the corporate limits and occupied it with his family for two years. In February, 1880, he purchased a lot within the city and commenced at once to improve it for his homestead, but did not occupy it with his family until the latter part of September of that year. During the entire time he has been carrying on business in the city, and since the spring of 1878 in premises which he owned. He testifies that during the entire time he had no other permanent home than the city of Dallas; that any other home was temporary. There is other evidence, but

these are the leading facts bearing on the question whether Stone had resided within the city for twelve months next preceding his election.

The briefs on both sides are voluminous, and the propositions submitted are so numerous, that instead of attempting to dispose of them separately, we propose to simply state our conclusions on what we deem the material questions in the case as presented. The court below based its judgment on the ground that the proceedings of the council were conclusive against the right of Stone to the office, or as it is not very clearly expressed in the judgment, "that defendant's plea of *res adjudicata* is well taken." Obviously a leading question in the case is as to the power of the city council to determine the eligibility of appellant to the office of mayor, and as to the conclusiveness of their determination against him.

By the charter the city council is made "the judge of the election and qualification of its own members." In this state it is settled law that the determination of the result of an election is a question of a political nature, and therefore one which it is competent for the law-making power to refer to other tribunals than the constitutional courts. Williamson *v*. Love, 52 Tex., 335, and cases there cited. On principle and authority the question of eligibility to office is one of a like nature, being one which the public welfare demands should be promptly decided prior to the induction into office of the party elected. Speaking of this very question the supreme court of Pennsylvania say: "Whenever the corporate law provides a mode of settling disputes therein without the intervention of the courts, that mode is deemed exclusive of the ordinary remedies, and the judicial authority is dispensed with because adequately supplied." Duffield's Case, Brightley's Lead. Cas. on Elections, p. 564; Commonwealth *v*. Allen, 70 Pa. St., 465; People *v*. Matzker, 47 Cal., 524; Trigg *v*. State, 49 Tex., 667;

Jones *v.* Shaw, 15 Tex., 577; 1 Dillon on M. C., sec. 139 *et seq.*

We do not doubt that it was competent for the legislature to make the city council the tribunal to determine primarily Stone's eligibility to the office of mayor. As to the conclusiveness of that determination to estop Stone from resorting to the constitutional courts to have it revised, the different members of this court do not agree. But we are all agreed that the decision of the city council was not subject to revision in this proceeding by *quo warranto.*

2. We are further of opinion that the pleadings of defendant, setting up the action of the council as a judicial determination that the relator was ineligible to the office of mayor, were sufficient on general demurrer, and that the court did not err in overruling such demurrer. Although the decision of the council was expressed in the form of a resolution, we are of opinion that the entire proceedings show a judicial determination against the relator, of the question of his eligibility. The different pleas of defendant were, on general demurrer, a sufficient showing that he had authority to exercise the functions of the office of mayor of the city of Dallas. High on Ex. Rem., secs. 710 and 716.

3. The record shows that the relator objected to the validity of the action of the council on various grounds, and amongst others, on the ground that J. J. Good presided over the council as mayor during said proceedings, and that the continuance in office of said Good depended upon the exclusion of Stone. We are of opinion that the question thus raised is sufficiently presented in the record and briefs to entitle appellant to the benefit thereof. But as we have reached the conclusion that the judgment should be affirmed, even if those proceedings were invalid, it is not necessary that this question be passed upon.

4. Under the various provisions of the charter, we are clear that the mayor is required to have resided within the corporate limits of the city for one year next preceding the election. We are also satisfied that the evidence negatives the possession by Stone of this necessary qualification. It thus appears that Stone was not entitled to be installed as mayor, and that Hunt, the presiding officer of the council, was lawfully discharging the duties of mayor of the city of Dallas. The judgment of the court was right, and it is not important to inquire whether the reasons leading the court to give that judgment were right or wrong.

5. From the record it appears highly probable that Hunt is not now discharging the duties of mayor, and if this had appeared with certainty, this court might have declined to consider the case.

As the facts justifying a contrary course do not clearly appear, we have thought best to dispose of the case. The judgment is affirmed.

AFFIRMED.

[Opinion delivered December 21, 1881.]