A. KRAKAUER v. RICHARD CAPLES.

No. 70.

·1. Contested Municipal Elections — Jurisdiction of the District Court.—Where a person is elected and qualified as mayor of a city, the office at the time having no salary or compensation, but the city council afterwards, under a provision of the charter, fixed the salary at $1200: Held, that this invested the office with a value which entitled the person to his action in the District Court for the trial of the right to the office.

2. Contest—Power of City to Determine, Final.—Where the charter of a city vested in the city council the power to judge as to the election and qualification of its members, including the office of mayor, their action in deciding a person elected ineligible to the office of mayor, no salary being attached to the office at the time, was a final determination of the matter, and was not rendered void by their action afterwards, fixing a salary to the office and ordering another election.

APPEAL from El Paso. Tried below before Hon. T. A. FALVEY.

Hague & Davis, for appellant.—1. The court below erred in finding that the action of the city council of El Paso was final and conclusive for all·purposes, and that the matter so determined was within its sole and exclusive jurisdiction. Kindell v. Campbell, 47 N. J. Law, 64; The State v. Kempf, 34 N. W. Rep., 227; High on Ex. Legal Rem., sec. 685; The State v. De Gress, 53 Texas, 387; The State v. De Gress, 72 Texas, 243.

2. The court erred in finding, as the office of mayor of the city of El Paso was worth less than $500 at the time the city council declared plaintiff ineligible, that therefore the District Court of El Paso County is without jurisdiction, because said council, on August 9, 1889, fixed the salary at $1200 per annum, and this action was brought September 14, 1889. The State v. Owen, 63 Texas, 261; Tidball v. Eichoff, 66 Texas, 58.

T. L. Nugent, for appellee.—1. Eligibility to office and the determination of the result of an election are both questions of a political character, which the law making power may refer to other tribunals than constitutional courts. Rogers v. Johns, 42 Texas, 339; Williamson v. Lane, 52 Texas, 335; Seay v. Hunt, 55 Texas, 545; Fort Worth v. Davis, 57 Texas, 225.

2. The decision of the city council adjudging appellant ineligible to the office of mayor was conclusive. O'Docherty v. Archer, 9 Texas, 295; The State v. De Gress, 72 Texas, 243.

3. The determination of the council was correct. 6 Am. and Eng. Encycl. of Law, 447; Searcy v. Grow, 15 Cal., 117; The State v. Clark, 3 Nev., 566; Carson v. McPhitridge, 15 Ind., 327; Brady v. House, 50 Miss., 626.

JAMES, CHIEF JUSTICE.—*Conclusions of Fact.*—1. That appellant was one of the two candidates for the office of mayor of El Paso at a regular election had on April 9, 1889, and received a majority of the legal votes.

2. That by a charter of the city of El Paso, enacted by the Legislature, and approved March 2, 1889, under the provisions of which the said election was held, it was provided, that the mayor and aldermen of said city constitute the city council, and the said council shall determine the rules of its proceedings, and shall be the judge of the election and qualification of its members. That on the first Saturday after an election, or as soon thereafter as possible, the said council shall meet and open and canvass the returns and declare the result of the election. That council that canvassed the returns of this election were those duly holding over from the previous term.

3. That on the first Saturday after the election (April 13, 1889), the council convened for that purpose, and the adherents of Morehead, the opposing candidate for mayor, filed a protest and contest, charging that many of the ballots were spurious and illegal, and praying that the council examine the returns and declare the legal result of the election. Thereupon the council determined upon a mode of procedure, and proceeded to canvass the returns and hear evidence, and continued the work until June 14, 1889, adjourning from day to day for that purpose; and after duly canvassing the same, ascertained that appellant Krakauer had a majority, but proceeding to pass upon his qualification for the office, declared that he was not eligible, and ordered another election.

4. That appellant was represented at said proceeding in the canvassing of the returns; but on being notified that the council would proceed and pass on his eligibility, failed and refused to attend or be represented in such inquiry.

5. That the ground of his ineligibility was the fact that at the time of his election he had declared his intention of becoming a citizen of the United States, and had his first papers only, the charter of April 9, 1889, providing that a person to be eligible to the office of mayor must, among other requirements, be a citizen of the United States.

6. That appellant received his final papers of citizenship on May 23, 1889, and on June 19, 1889, he took and subscribed the oath of office according to the provisions of the charter, no bond being required.

7. At the time of the election and of the action of the council declaring him ineligible, and of his taking the oath, no salary or other emolument was attached to the office; but under a provision in the charter which provided, that " all officers and agents of the city except the aldermen and recorder [whose pay was fixed] shall receive for their services such compensation as the city council may ordain," the council did, on August 9, 1889, for the first time fix the salary of mayor at $1200 per annum. The term of the mayor's office was by the charter fixed at two years.

8. That the election ordered on April 13, 1889, took place on June 28, 1889, and appellee Richard Caples was declared elected, and performed the duties of the office for the remainder of the term, and the evidence shows he received the salary from August 9, 1889, when the salary was fixed at $1200, and that prior to such date the office was without value.

9. It was admitted that at the time of the proceedings of April 13, 1889, there was no general ordinance regulating the proceedings of the council, or providing rules to govern proceedings in reference to election contests or investigations as to qualifications of its members.

The suit was filed September 14, 1889, to recover the office and for the salary of $100 per month from August 9, 1889, to the time of trial.

The District Court dismissed the cause for want of jurisdiction, on the grounds, assigned in the conclusions of the district judge, that the office was worth less than $500 at the time the council acted, this action being final on the subject; although afterwards, and before the bringing of the suit, the office may have become worth more than that sum.

*Conclusions of Law.*—We are of opinion that the District Court had jurisdiction to determine the right of plaintiff to the office. At the time the action was brought, the office to which the plaintiff claimed to be entitled, by virtue of the salary attached to it, appeared to be of greater value than $500. It is true that when he was voted for and when he qualified the office carried no salary or other compensation; but at the same time the charter provided for and contemplated the annexation of a salary to the office, which in due course of time was done; and when it was done, the office became invested with a value sufficient to bring controversies concerning it within the jurisdiction of the District Court. It may be said, that the fixing of a salary in respect to this office was not inherent in the office; that it rested in the bounty of the council, which could have placed it at a less sum or refrained from granting it altogether; but jurisdiction is to be determined by what is placed in controversy by the pleading of the plaintiff, unless it is made to appear that the allegations have been falsely made for the purpose of conferring jurisdiction.

We believe the court erred in its conclusion of law, that there was no jurisdiction because of the fact that at the time the council acted the office had no value. The right of action by one entitled to an office against an intruder is in its nature a continuing one. The amount of the salary in this case was uncertain, owing to the control which the council had over the subject by ordinance; but when the salary that became attached to it made it exceed in value $500, it seems to us it presented a case for the determination of the District Court. If it was made to ap-

pear, as was done in this case, that the defendant was rightfully in office, the judgment should have disposed of the case on its merits.

The other reason given by the district judge for not determining the matters in issue, namely, that the action of the council in passing adversely on plaintiff's qualification for the office was conclusive, was correct. We take this view of it, because at the time the council so determined the office was of no present value, and the subject matter so committed to the jurisdiction of the council did not therefore come within the cognizance of the District or other constitutional court.

The case of The State v. De Gress, 72 Texas, 243, makes it clear that there is constitutional authority for legislative grant of judicial power to special tribunals where the matter is not such as comes within the jurisdiction conferred on the courts expressly created by the Constitution. See, also, Seay v. Hunt, infra. Where an office had no value, we know of no constitutional or other objection, under the Constitution of 1876, to lodging the power to adjudicate matters relating to an office such as the one in question to a municipal council or other special body. By the amendment of 1891, giving the District Court jurisdiction over all contested elections, it may now be different.

It was the duty of the council to proceed, at a designated time after the election, to determine the vote and the qualification of the elected candidate. This duty devolved on them by law, and was performed at a time when, by reason of the office having no value, it must be conceded the District Court and the other courts created by the Constitution had no jurisdiction in the matter, and it is clear to us that the action of the council in passing adversely on the plaintiff's qualification was a final determination of that question. The later event of a salary being attached by the council to the office, in excess of $500, after another election had been ordered and another mayor elected, could not be held to render null and void the action of such special tribunal, taken under the circumstances and at a time when its power was complete and final over the subject matter. There was nothing in the Constitution or the charter authorizing an appeal, nor did the District Court possess any supervisory control over such tribunal upon which to base a power to review the act of the council. It has been held that it was not subject to be revised by a quo warranto proceeding, and this proceeding partakes of that nature. Seay v. Hunt, 55 Texas, 545.

Our conclusion is, that the plaintiff's right to the office did not exist after the aforesaid action of the council, and therefore he could not recover of defendant either the office or its emoluments. An inquiry into the question whether or not plaintiff's status as to citizenship rendered him eligible to the office would be useless. The council may have acted irregularly or arbitrarily and unjustly in deciding against plaintiff's eligibility, but that body had the sole power to settle that question, and its

action could not be revised by any other tribunal for an error either of law or of fact.

The petition of plaintiff was concerning a matter which was within the jurisdiction of the District Court to hear and determine; but plaintiff had failed to show himself entitled to the relief he asked, and the form of the judgment should have been that the plaintiff take nothing by his suit.

The judgment will be reformed and rendered accordingly. The judgment here rendered being of the same nature as the one rendered in the District Court, the costs will be adjudged against appellant and the sureties on the appeal bond, as provided in section 37 of the act relating to the Courts of Civil Appeals.

*Reformed and rendered.*

Delivered November 22, 1893.

Justice NEILL did not sit in this case.